106 N.J. Super. 329 (1969)
255 A.2d 795
STATE OF NEW JERSEY, CHARLES J. KROL, REGIONAL SUPERVISOR, PLAINTIFF-RESPONDENT,
v.
LARRY SELIGSON, t/a CHICKEN DELIGHT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1968.
Decided July 7, 1969.
*330 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Sidney Salant, a member of the New York Bar, argued the cause for appellant (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. Jerome M. Katz, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant appeals from a judgment imposing a penalty of $50 for violation of a regulation promulgated by the state superintendent of the Division of Weights and Measures under the authority of Title 51, Chapter 1, of the statute which deals with the subject of sales of products by measure, weight or containers.
The facts are not in dispute. Defendant conducts a business in Union City under a "Chicken Delight" franchise where pieces of chicken are cooked to order and sold in buckets for off-premises consumption. On February 28, 1968 *331 Charles Krol, regional supervisor of the Division, after examining the menu at defendant's place of business, placed an order for 12 pieces of chicken priced at $3.12. Defendant placed the chicken parts in a batter, cooked them in an electric oven for about 15 minutes, and then delivered them to Krol in a cardboard bucket. The chicken parts were not weighed before or after they were cooked.
Krol brought suit in the county district court charging the defendant with having sold poultry by the bucket and not by net weight in violation of Regulation 16, promulgated pursuant to N.J.S.A. 51:1-61, and sought recovery of a penalty prescribed by N.J.S.A. 51:1-89. At the conclusion of the trial the court entered judgment in favor of the plaintiff imposing a $50 penalty against the defendant. This appeal followed.
Regulation 16 was promulgated by the state superintendent under the purported authority of N.J.S.A. 51:1-61, which states:
"The state superintendent may make rules and regulations, which shall govern the sale of commodities."
Regulation 16 provides as follows:

"Meat and poultry to be sold by net weight only.
1. All meat and/or poultry, offered for sale or sold in the State of New Jersey, shall be offered for sale or sold on the basis of avoirdupois net weight only, and every person, firm, corpartnership or corporation selling or offering for sale any meat and/or poultry shall at the time of sale or delivery thereof weigh by avoirdupois weight the quantity of meat and/or poultry sold or delivered and for such purpose shall use a scale tested and sealed by the State Department of Weights and Measures or by any county or municipal superintendent or Assistant Superintendent of Weights and Measures.

* * * * * * * *
3. The term `poultry' as used in this act shall mean and include chickens, ducks, geese, turkeys, guineas, and all products the basic ingredient of which is poultry of the prescribed classes; it being provided, however, that squabs shall be exempt from the requirements of this regulation.
*332 4. The penalty for violation of this regulation shall be not less than twenty-five dollars.
5. Effective April 30th, 1932. This regulation is promulgated under the provisions of Section 18, Article 4 [N.J.S.A. 51:1-61], of the laws relating to weights and measures, part of which reads as follows: `The State Superintendent may also make rules and regulations which shall govern the sale of commodities.'"
Defendant contends that N.J.S.A. 51:1-61 is unconstitutional because the Legislature failed to provide any standards to guide the state superintendent in the exercise of his power to make rules and regulations governing sales of "commodities," or to determine what commodities are placed within his power. Defendant argues that "commodities" could include everything from pins to steel beams and even locomotives. This point presents a serious question which we find unnecessary to decide because of our disposition of the case on other grounds. However, we think it is appropriate to point out that the statute may be vulnerable as now drawn in order that the Legislature, in its wisdom, may correct it to preclude a future challenge that it is unconstitutional.
See, for example, the Model State Law which has been adopted by the National Conference on Weights and Measures, sponsored by the United States Department of Commerce, National Bureau of Standards, which deals with the sale of foods and food products by weight, including the sale of cooked foods prepared for off-premises consumption.
It is well recognized that the Legislature has the power to delegate to an administrative agency the exercise of a limited portion of its legislative power with respect to a specific subject matter. However, the Legislature may not vest unbridled or arbitrary power in the agency but must furnish reasonably adequate standards to guide it. Ward v. Scott, 11 N.J. 117, 123-124 (1952). The standards need not be expressely stated in a particular section of the statute if they may reasonably be inferred from the statutory scheme as a whole. Schierstead v. City of Brigantine, 20 N.J. 164, 169 (1955). And, there is no unconstitutional delegation of *333 legislative power so long as administrative discretion is hemmed in by standards sufficiently definitive to guide its exercise. Cammarata v. Essex County Park Commission, 26 N.J. 404, 410 (1958).
In the instant case the delegation of power set forth in N.J.S.A. 51:1-61 provides simply that, "The state superintendent may make rules and regulations, which shall govern the sale of commodities." The term "commodities" is not defined in the statute. Webster's New International Dictionary (2d ed. 1958) defines it as, "* * * everything movable that is bought and sold  goods, wares, merchandise, produce of land, etc." Thus, hypothetically, the state superintendent under N.J.S.A. 51:1-61 could regulate the sale of everything movable. The superintendent argues that here he does not claim the right to regulate the sale of everything movable, only food. But, nowhere in the many sections of the statute is there a provision relating to the sale of all foods at retail. Instead, there are provisions limited to specific foods  51:1-10 (milk and cream), 51:1-17 (foods which are capable of being measured by dry capacity measure), 51:1-18 (bread), 51:1-24 to 28 (fruits, berries and vegetables), 51:1-29 (food in packaged form), 51:1-31.1 to 31.10 (ice cream and frozen products). On the other hand, since the statute deals with many things other than food, we cannot say that "commodities" must mean food. For example, the statute covers coal, charcoal, thread, seeds, ice, grain, etc. Therefore, we find it difficult to infer from the context of the statute that the state superintendent has the power to regulate the sale of all foods at retail.
In the State of New York the sale of cooked-to-order chicken parts for off-premises consumption (Chicken Delight) is governed by a regulation promulgated by the Commissioner of Agriculture and Markets. However, that regulation is based on a statute: section 193 of the Agriculture and Markets Law, McKinney's Consol. Laws, c. 69, which provides that all food and food products offered for sale at retail shall be sold or offered for sale by net weight, standard *334 measure or numerical count as may be prescribed by the commissioner. The regulation promulgated by the commissioner under authority of the statute deals with the sale of meat, meat food products, and poultry (whole or parts) by net weight. It specifically exempts the sale of such foods which are sold for immediate consumption on the premises where sold or as one of several elements comprising a ready-to-eat meal sold as a unit for off-premises consumption. In Wickham v. Levine, 47 Misc.2d 1, 261 N.Y.S.2d 702 (Sup. Ct. 1965), affirmed 24 A.D.2d 1035, 264 N.Y.S.2d 785 (App. Div. 1965) and 23 N.Y.2d 923, 298 N.Y.S.2d 507 (Ct. App. 1969), the court enjoined the sale of Chicken Delight cooked-to-order chicken parts for off-premises consumption other than by net weight. However, the court in Wickham based its decision upon an interpretation of the statute as implemented by the regulation.
Our statute, Title 51, unlike that in New York, does not specifically provide for the sale of food or food products at retail (other than noted above). The statutory authority granted to the state superintendent to make rules and regulations is broad and unrestricted. We believe that the statute should be corrected to preclude an attack upon its constitutionality. At this time we need go no further than to hold, as we do, that Regulation 16 does not apply to the Chicken Delight operation.
The defendant contends that he does not sell poultry or poultry products but prepared food which constitutes a meal or a component part of a meal which is cooked-to-order. The Division, interpreting its own regulation, alleges that the sale of poultry by the piece rather than by net weight violated the regulation, regardless of whether it was cooked or not cooked at the time of the sale. It argues that a bucket of cooked chicken parts is a "product, the basic ingredient of which is poultry," and that it falls within the same classification as bologna, salami, boiled ham, smoked ham, sliced turkey, corned beef and similar precooked foods, all of which are covered under Regulation 16.
*335 We think there is a distinct difference between the cold cuts of poultry and meat referred to by the Division and plaintiff's buckets-of-chicken. The cold cuts are fully prepared before they are exposed for sale. In the Chicken Delight operation the food is not prepared before it is exposed for sale. The customer orders from a menu a bucket of chicken parts which contains a serving for one or more persons at a unit price. The chicken parts are then breaded in a special batter and cooked. They are then delivered to the customer either at the store or his home for off-premises consumption. We see no difference in the Chicken Delight operation than the sale of the familiar "hamburger," "hot dogs" and "pizza pies" which are cooked-to-order and sold by unit and not by weight for off-premises consumption.
We further note that in the enactment of the Sales Tax Act (N.J.S.A. 54:32B-1 et seq.) the Legislature recognized the difference between the sale of food cooked-to-order for off-premises consumption (which is subject to the tax) and sale of food in an unheated state (other than sandwiches) which is of the type commonly sold in the same form and condition in food stores (which is not subject to the tax). N.J.S.A. 54:32B-3(c) (3). It is undisputed that the Chicken Delight operation is subject to the sales tax.
We find nothing in the language of Regulation 16 to indicate that it applies to the sale of food, cooked-to-order, for off-premises consumption. Accordingly, we conclude that the sale of chicken parts, cooked-to-order, described as Chicken Delight, is not governed by the regulation and therefore the judgment entered in this case must be set aside.
We find it unnecessary to pass on the other points raised by the defendant.
Reversed.