OSCAR SCHIERSTEAD, PLAINTIFF-APPELLANT, v. CITY OF BRIGANTINE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND S. D. WALKER, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued November 28, 1955—Decided December 19, 1955.

*Mr. David M. Perskie* argued the cause for appellant (*Messrs. Perskie and Perskie,* attorneys).

*Mr. Henry P. Megargee, Jr.,* argued the cause for respondent City of Brigantine (*Mr. John Lloyd, Jr.,* attorney).

*Mr. Elias G. Naame* argued the cause for respondent S. D. Walker, Inc.

*Mr. David D. Furman,* Deputy Attorney-General, argued the cause for intervenor, State of New Jersey (*Mr. Grover C. Richman, Jr.,* Attorney-General; *Mr. Harold Kolovsky,* Assistant Attorney-General, and *Mr. Lawrence E. Stern,* Deputy Attorney-General, on the brief).

The opinion of the court was delivered by
WACHENFELD, J. The sole issue before us is the constitutionality of *N. J. S. A.* 52:27–29.1, the other matters alleged in the complaint having been disposed of.

From the undisputed facts in the complaint, it appears that on and since December 10, 1945 the City of Brigantine, a municipality of the State of New Jersey, was under the control and supervision of the Municipal Finance Commission pursuant to *N. J. S. A.* 52:27–1 *et seq.* It then entered into a contract to sell to Samuel D. Walker, or his assignee, certain lots or parcels of land to which it had title or to which it held tax sale certificates. The city further agreed

to proceed with the foreclosure of the tax sale certificates which it held. Payment was to be made by Walker pursuant to a schedule set forth in the agreement, which was to continue for a period of ten years from and after the final adoption of a refunding or refinancing agreement with the city's creditors and upon the approval of the Municipal Finance Commission and the Commissioner of Local Government.

The Municipal Finance Commission assented to the contract with Samuel D. Walker on December 20, 1945 and the contract was subsequently assigned by Walker to S. D. Walker, Inc.

From affidavits submitted it appears that at the time of entering into the contract the city had outstanding debts and obligations amounting to approximately $3,500,000. Its assessed valuation was approximately $800,000 and it was necessary to foreclose the tax sale certificates to amortize its debts, its creditors having demanded that the real estate acquired by foreclosure be liquidated and sold.

On July 2, 1955 the present complaint was filed by the plaintiff, a resident and taxpayer of the City of Brigantine, on behalf of himself and other taxpayers of the city, alleging that *N. J. S. A.* 52:27–29.1, which concededly authorized the contract between the city and Walker, was itself unconstitutional and the contract was therefore void.

The relief sought was not to void all that had transpired under the contract prior to the filing of the suit but, rather, only to enjoin future performance. Initially, other relief was sought in the complaint based upon allegations of fraud, but these matters, as already indicated, were eliminated, leaving the constitutional question the sole issue to be determined here.

Under *R. R.* 4:37–2 the State of New Jersey intervened, the constitutionality of an act of the Legislature being called into question.

The statute under attack, *N. J. S. A.* 52:27–29.1, is a single subsection of the Municipal Finance Commission Law and reads:

"The governing body of any municipality in which the commission is or may be functioning may, upon the express consent in writing of the commission, sell, exchange or otherwise dispose of any certificate of tax sale or tax title, standing in the name of the municipality, or sell, exchange, lease or otherwise dispose of any real estate or rights or interest therein owned by the municipality and determined by the governing body to be not needed for public use. Any such sale, exchange, lease or other disposition may be authorized by resolution of the governing body and, subject to the consent of the commission as aforesaid, may be at public or private sale, through a broker, agent or otherwise, for cash or upon credit, for such consideration, and subject to such conditions and commissions, as the governing body in its discretion may determine. All moneys received by the municipality from any such sale, exchange, lease or other disposition shall, if the commission so provide, be paid only to the account of the reserve fund referred to in section 52:27-25 of this Title. * * *"

The appellant does not contend that the Municipal Finance Commission Law, *N. J. S. A.* 52:27–1 *et seq.*, is fundamentally or completely unconstitutional, a contrary determination having already been made in this respect in *Hourigan v. North Bergen Tp.,* 113 *N. J. L.* 143 (*E. & A.* 1934), and *Shay v. Delaware Tp.,* 122 *N. J. L.* 313 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 124 (*E. & A.* 1940). Rather, he seeks an adjudication that the one subsection of the act, above quoted, is invalid "as an unconstitutional delegation of power by the legislature" to the Municipal Finance Commission because there is no "norm, standard or condition within or pursuant to which the Municipal Finance Commission may determine to grant or withhold its 'express consent in writing.'"

The primary support for the appellant's view is said to be centered in *Jamouneau v. Local Government Board,* 6 *N. J.* 281 (1951). There we pronounced *N. J. S. A.* 40:60–26(*d*), which authorized the private sale of municipal lands upon the consent of the Director of the Division of Local Government, to be an unconstitutional delegation of legislative power to the Director since there was a total absence of any standard or norm to guide the Director in giving or withholding his consent.

The statutory scheme encountered in the *Jamouneau* case, *supra*, is, we believe, entirely unrelated to that found here. Indeed, in *Jamouneau* we were not dealing with a statutory scheme at all but a single isolated subsection of a statute dealing with the disposition, by private sale, of municipal property.

Here, however, the statute under attack forms but one section of an extensive act, the purpose, powers and objectives of which, expressed by its broad and comprehensive terms, are to restore, where possible, financial stability to insolvent municipalities without interrupting to any great extent the everyday existence of the unit of local government.

In *Faitoute Iron & Steel Co. v. City of Asbury Park*, 316 *U. S.* 502, 62 *S. Ct.* 1129, 1130, 86 *L. Ed.* 1629 (1942), the Supreme Court of the United States said of our Municipal Finance Commission Act:

"* * * In broad terms, the legislation, through combined administrative and judicial action, adapted the underlying principles of an equity receivership to the solution of the problem of insolvent municipalities. * * *"

In *Hourigan v. North Bergen Tp., supra*, in sustaining the constitutionality of the Municipal Finance Commission Law, the court determined that the act conferred upon the Finance Commission powers somewhat akin to those exercised by receivers of insolvent corporations and was designed to give support to tottering municipalities and to prevent complete collapse and total paralysis of their respective functions. The act, it was said, embodied wise and useful provisions tending to restrain and check the reckless levy of taxes and to promote economy and the orderly conduct of the municipality's affairs, its primary purpose being to keep intact the corporate structure and to continue municipal functions until rehabilitation could be afforded.

And in *Rippel v. City of Asbury Park*, 118 *N. J. L.* 45 (*Sup. Ct.* 1937), the court again pointed out that the statutory scheme of the act in question was to secure, through the agency of the Municipal Finance Commission, a formula for

liquidation with as much expedition as possible in view of the obligations in default. It defined the Commission's basic duty as that of attaining economic stability without cessation of essential municipal functions while providing unsatisfied creditors with a reasonable remedy for the enforcement of their claims.

In ascertaining the presence of standards and norms to support delegated powers, it is fundamental that we are not confined to the four corners of the particular section under consideration but are obligated to examine the entire act in the light of its surroundings and objectives. Nor need the standards be set forth in express terms, if they may reasonably be inferred from the statutory scheme as a whole.

These rules of construction were succinctly set forth in the recent case of *Ward v. Scott*, 11 *N. J.* 117, 123 (1952), where Justice Jacobs said:

"* * * In dealing with the question of standards it is elementary that we are not confined to the specific terms of subsection (d) but must examine the entire act in the light of its surroundings and objectives. See *Carlson v. Landon*, 342 *U. S.* 524, 72 *S. Ct.* 525, 96 *L. Ed.* [547] (1952). Nor are we restricted to the ascertainment of standards in express terms if they may be reasonably implied from the entire act. See *Brandon v. [Board of Commissioners of Town of] Montclair*, 124 *N. J. L.* 135, 143, 11 *A.* 2d 304, 309 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367, 15 *A.* 2d 598 (*E. & A.* 1940), where Justice Heher rightly noted that 'A statute often speaks as plainly by inference, and by means of the purpose which underlies it, as in any other manner. That which is clearly implied is as much a part of the law as that which is expressed.' * * * On the present issue this wholesome doctrine may receive support not only from the general presumption of the validity of legislation (*Attorney General v. McGuinness*, 78 *N. J. L.* 346, 371, 75 *A.* 455 (*E. & A.* 1910)), but also from *Article* IV, *Section* VII, *paragraph* 11 of our *Constitution of* 1947 which states that the provisions of the Constitution and of any law concerning municipal corporations 'shall be liberally construed in their favor.' "

Tested by these settled rules, there is no substantial basis for the plaintiff's claim that the Legislature has, by the act in question, granted uncontrolled power to the Municipal Finance Commission.

The Commission exercises powers "somewhat akin to those exercised by receivers of insolvent corporations," and under *N. J. S. A.* 52:27–65 is guided by the express standard and purpose of providing for the "payment of existing obligations in such a way as to cause the least embarrassment to property owners as taxpayers." The statutory direction implicit in the act itself is for the Commission to restore the insolvent municipality to solvency while preserving and maintaining it as a functioning unit of local government.

"[T]he exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power," *Ward v. Scott, supra,* and general legislative guides counselling prudence and solicitude for the municipal welfare spell out in this instance a totality of statutory certainty and standards sufficient under our decisions, supported by much authority.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.