114 N.J. Super. 196 (1971)
275 A.2d 746
IN THE MATTER OF THE APPLICATION OF THE MONTCLAIR SAVINGS BANK FOR APPROVAL OF A BRANCH OFFICE AT 508 POMPTON AVENUE, CEDAR GROVE TOWNSHIP, ESSEX COUNTY, IN THE FIRST BANKING DISTRICT OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1971.
Decided March 17, 1971.
*197 Before Judges KILKENNY, HALPERN and LANE.
Mr. Fred G. Stickel, III, argued the cause for appellant Cedar Grove Savings and Loan Association (Messrs. Stickel, Kain and Stickel, attorneys).
*198 Mr. Joseph C. Glavin, Jr., argued the cause for respondent Cedar Grove State Bank.
Mr. Irwin I. Kimmelman argued the cause for respondent Montclair Savings Bank (Messrs. Hannoch, Weisman, Stern & Besser, attorneys).
Mr. T. Robert Zochowski argued the cause for the Commissioner of Banking (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KILKENNY, P.J.A.D.
On March 17, 1970 the Commissioner of Banking of the State of New Jersey approved the application of the Montclair Savings Bank for a branch office in Cedar Grove Township.
Cedar Grove Savings & Loan Association and Cedar Grove State Bank (a commercial bank), objectors to the application, have taken this appeal from the decision and order of the Commissioner of Banking. They contend that (1) the Commissioner's decision is not supported by "substantial evidence;" (2) the decision is "arbitrary, capricious and unreasonable;" (3) the decision is "based partly on evidence dehors the record and, therefore, should be set aside," and (4) the "home-office protection" provision of N.J.S.A. 17:9A-19(B)(3) was "incorrectly interpreted" by the Commissioner and such interpretation was "contrary to the spirit and intent of the Legislature."

I
Points 1 and 2 are substantially the same and will be treated together. Both are governed by the same basic legal principles.
It is not the function of the appellate tribunal to substitute its independent judgment for that of the Commissioner. The scope of review is limited to determining whether, in the light of the nature *199 of the matter before him and the questions presented, the Commissioner has made adequate basic findings of fact which are supported by the evidence and which in turn support his ultimate conclusions and final determination. In re Application of State Bank of Plainfield, 61 N.J. Super. 150, 158 (App. Div. 1960).
Otherwise stated,
The scope of the appellate review of administrative orders is generally limited to determining whether the factual findings are supported by substantial evidence. * * * The appellate court has the power and duty to assay the facts, but only to determine whether the evidence before the administrative body furnished a reasonable basis for its factual conclusions and action. In re Application of Millburn-Short Hills Bank, 59 N.J. Super. 470, 473-474 (App. Div. 1959).
Where the record discloses substantial evidence to support factual findings of the administrative body, a presumption of reasonableness attaches to its findings. Ibid.
See, too, Essential S & L. Ass'n v. Howell, 105 N.J. Super. 424, 432-433 (App. Div. 1969).
We have exercised our power and duty to assay the facts. The record discloses substantial evidence to support the factual findings of the Commissioner, which in turn support his ultimate conclusions and final determination. The decision is not arbitrary, capricious and unreasonable. The establishment of this branch office for a savings bank in Cedar Grove is in accord with the statutory requirements, N.J.S.A. 17:9A-20. The Commissioner properly determined that the general economy of the area and the reasonable potential were such that there was room for this further branch bank without causing excessive competition with real harm to any institution or unduly affecting the banking structure at large. Cf. In re Application of Howard Savings Institution of Newark, 32 N.J. 29 (1960).

II
We next examine the objectors' claim that the decision is "based partly on evidence dehors the record and, therefore, should be set aside."
*200 The reference is to the following comment by the hearing officer in his report and recommendation, dated January 29, 1970:
Dr. Flink's approach utilized the increment in savings of 1968 over 1967 to determine the average per family savings increment. This, too, appears to be a valid method. Thus he contends that commercial banks enjoyed a $200 million increment, savings banks $165 million, and savings and loan associations, $281 million. However, for some inexplicable reason, Dr. Flink failed to include the statistics for national banks and federal savings and loan associations in his statistical analysis. Thus, in the same time period, savings deposits in national banks increased in excess of $350 million, and deposits in federal savings and loan associations increased by some $80 million. Thus, rather than a total increase in savings in the time period of $650 million, the correct figure is in excess of $1 billion. (And, were 1969 figures available, they would apparently indicate a much greater growth.) Thus, rather than Dr. Flink's estimate of a $415 or $420 dollar average per family increment in savings, the appropriate amount is approximately $666. Based on the 3500 families residing in Dr. Flink's trade area, incremental savings would total $2,331,000. Based on what I have previously found to be the appropriate trade area, which area contains some 4800 families, the figure would be $3,196,800. [Emphasis added]
In making the italicized statement, the hearing officer did not indicate the source of this information.
There was nothing improper in the hearing officer's commenting critically on Dr. Flink's failure to include in his figures the statistics for savings deposits in national banks and deposits in federal savings and loan associations. Truly, there was "some inexplicable reason" for this failure. Dr. Flink's estimate of $415 or $420 per family increment in savings was not validly grounded, based as it was without consideration of the statistics of savings accounts in national banks and federal savings and loan associations. The "potential" for savings in the area was the point in issue.
An administrative agency, such as the State Department of Banking, "has full latitude to avail itself on the wealth of general information and expert knowledge in the performance of its day-to-day administrative activities." Pennsylvania Railroad Co. v. Dept. of Public Utilities, 14 *201 N.J. 411, 427 (1954). "By taking appropriate official notice, making it a part of the hearing record, and affording fair opportunity of refutation, the board may adequately protect both the public and private interests concerned." Ibid.
It would have been better for the Department of Banking to add to the statistics set forth in the record the source of that information. But the objectors have not challenged the accuracy of these figures. Nor have they shown that they have been prejudiced thereby. The use of these statistics was essentially to negate or weaken Dr. Flink's basis for his opinion as to deposit potential. There was ample other proof to support the fact findings and conclusions as to this aspect of the case. The evidence for the ultimate decision on this point came from Mr. Florin's economic feasibility study (Exhibit D-7) and from the testimony of Clarence R. Sandberg, vice-president of the Montclair Savings Bank.
Accordingly, we find no valid basis for reversal on this ground.

III
We consider finally the contention by the objectors that the "home-office protection" provision of N.J.S.A. 17:9A-19 (B) (3) was incorrectly interpreted by the Commissioner, and such interpretation was contrary to the spirit and intent of the Legislature. We note at this point some pertinent facts.
On July 16, 1969 Montclair Savings Bank, a state-chartered mutual savings bank, whose home office is in Montclair, applied to the then Department of Banking and Insurance for approval to open a branch at 508 Pompton Avenue, Cedar Grove, Essex County, New Jersey. Accompanying and supporting the application was an extensive economic feasibility study prepared by Francis A. Florin, a former top official of the New York Department of Banking and Insurance with many years of experience in the area of branch bank applications.
*202 At the time of the filing of Montclair's application on July 16, 1969 there was then pending before the Commissioner an application by Cedar Grove State Bank, one of the objectors and appellants herein, for approval of a charter for a state bank to be located in Cedar Grove. This would be for a new bank with home office in Cedar Grove, as distinguished from Montclair's proposed branch bank in Cedar Grove. The other objector and appellant, Cedar Grove Savings and Loan Association, was already in existence and had been since 1913, with its principal office at 579 Pompton Avenue, in Cedar Grove, a few hundred feet north of Montclair's proposed site.
By letter dated August 7, 1969 from the attorney for Cedar Grove Savings and Loan Association to the Commissioner of the Department of Banking and Insurance, confirming a telegram from the attorney to the Commissioner requesting a hearing on Montclair's application, a hearing was requested. Such a hearing was held on November 10, 13 and December 5, 1969. Meanwhile, the Commissioner approved conditionally the charter application of Cedar Grove State Bank on the morning of November 13, 1969. Counsel for this newly approved bank thereupon appeared at the hearing then in progress to announce his presence and that he might later object based upon the "home office protection" provision.
When the Commissioner granted approval on March 17, 1970 to Montclair Savings Bank to open its branch in Cedar Grove, the Cedar Grove State Bank had not yet opened its doors for business; had not yet received its certificate of authority to do business; had not yet had approval of its top management, and had not become a member of the Federal Deposit Insurance Corporation. All of these uncompleted steps before it can actually commence business remain uncompleted, so far as we are aware.
L. 1968, c. 415, § 1, approved January 17, 1969, became effective July 17, 1969. It is also known as N.J.S.A. 17:9A-19(B)(3). It provides:
*203 No bank or savings bank shall establish or maintain a branch office which is located outside the municipality in which it maintains its principal office; except that a bank or savings bank may establish and maintain a branch office or offices anywhere in the same banking district as that in which it maintains its principal office. * * *
(3) when each proposed branch will be established in a municipality in which no banking institution has its principal office * * *.
In substance the question is: Did Cedar Grove State Bank have its principal office in Cedar Grove so as to preclude Montclair Savings Bank from having a branch office in that municipality?
There is no doubt that Cedar Grove State Bank was not open for business when the branch application of Montclair was approved. In Suburban Trust Company v. National Bank of Westfield, 222 F. Supp. 269 (D.C.N.J. 1963), Judge Wortendyke held that a bank was not barred from opening a branch in a municipality merely because another bank had received branch approval first. As he expressed it:
[A] bank "has" a branch in a municipality, for the purpose of determining the right of another bank to open a branch there, only when it has a branch in operation and not when it merely has the approval of the appropriate governmental authority to open a branch. [at 275]
That case involved a state bank which had obtained "approval" from the Commissioner one year before the national bank had obtained approval from the Comptroller of the Currency.
The Commissioner applied that rationale in the instant case. Thus, on November 13, 1969 when charter approval was granted to Cedar Grove State Bank, the Commissioner had no intention that his action would bar branch approval for Montclair, for which a hearing was then in progress.
The objectors rely heavily upon In re Summit and Elizabeth Trust Co., 111 N.J. Super. 154 (App. Div. 1970), decided July 14, 1970, subsequent to the Commissioner's decision herein. That case held that where the Commissioner approved the charter of a home office bank, Springfield *204 State Bank, and objectors appealed and secured a stay of operation of the Commissioner's decision, such bank was entitled to "home office protection" under N.J.S.A. 17:9A-19 (B)(3), with respect to the application of another bank, Summit and Elizabeth Trust Co., for a branch which was granted within seven days after denial of certification by the Supreme Court, In re Springfield State Bank, Springfield Tp., Union County, 55 N.J. 312 (1970), giving finality to Springfield State Bank's charter approval. As this court stated:
In the factual complex of this case, it would be inequitable to deny to Springfield the benefits of the Branch Banking Act while it was subject to the statutory concomitant burdens and could not obtain a certificate of authority and open for business because of the stays obtained by the objectors of its charter. [111 N.J. Super. at 168]
In the instant case there are other important factors which must be weighed. N.J.S.A. 17:9A-20 provides that, if the Commissioner makes the required findings, he "shall, within ninety days after the filing of the application, approve such application." (Emphasis added). Montclair's application was filed on July 16, 1969. We do not subscribe to the contention of the objectors that the application was null and void because the 1968 amendment did not become effective until July 17, 1969 although it was approved on January 17, 1969. We agree with Montclair's view that its application is deemed to have been filed on July 17, 1969, the effective date of the 1968 act. On that premise and in the light of the Commissioner's findings, approval of the branch bank application should be deemed to have taken place on October 15, 1969  90 days after the effective filing of the application, as mandatorily required by N.J.S.A. 17:9A-20.
On the other hand, N.J.S.A. 17:19A-11(B) provides, with reference to an application for a state bank charter:
The commissioner shall, within ninety days after the hearing, approve or disapprove the application * * *.
*205 The Cedar Grove State Bank hearing was completed on July 17, 1969 and thus approval should have been given within 90 days after the hearing. Abiding by the statute, Cedar Grove State Bank should have been granted approval also on October 15, 1969, instead of on November 13, 1969. On that basis, the state bank approval and branch bank approval, if the statute had been complied with, would afford priority to neither and thus eliminate the concept of "home office protection."
There is no provision as to the effect of a delay by the Commissioner in performing his administrative function. Yet, it would be inequitable to permit unauthorized delay to prejudice an applicant in the face of the mandatory provisions of the statutes. It would seem to be more in the interests of justice to decide the issue as though a timely decision had been made and on the basis of the substantive merits of the respective claims. For that reason we conclude that the "home office protection" provision does not, under the circumstances herein, preclude approval of Montclair's branch bank in Cedar Grove.
The decision and order of the Commissioner of Banking are affirmed.