SPRINGFIELD STATE BANK, a banking corporation of New Jersey, Appellant,

v.

The NATIONAL STATE BANK OF ELIZABETH, a national banking corporation, et al.

No. 71-1180.

United States Court of Appeals, Third Circuit.

Argued Jan. 25, 1972.

Decided April 26, 1972.

As Amended May 2, 1972.

Jerome C. Eisenberg, Clapp & Eisenberg, Newark, N. J., for appellant.

Donald G. Kein, Kein, Pollatschek & Iacopino, Union, N. J., for appellee Union Center National Bank.

Richard F. Lert, Wilentz, Goldman & Spitzer, Perth Amboy, N. J., for appellee National State Bank of Elizabeth.

James C. Hair, Jr., Dept. of Justice, Washington, D. C., for appellee William B. Camp.

Before BIGGS, MARIS and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

The plaintiff, Springfield State Bank, herein called "Springfield Bank", a banking corporation of the State of New Jersey, brought this suit in the District Court for the District of New Jersey on July 22, 1969 against the National State Bank of Elizabeth, herein called "National State", and the Union Center National Bank, herein called "Union Center", two national banking corporations, and William B. Camp, Comptroller of the Currency of the United States. In its complaint Springfield Bank alleged that since February 20, 1969 it has enjoyed the right of so-called "home office protection" conferred by N.J.S.A. 17:9A–19; that the defendants have violated that right, contrary to the New Jersey statute and 12 U.S.C.A. § 36 in that the Comptroller had granted or was about to grant approvals to National State and Union Center to establish branches in the Township of Springfield, Union County, New Jersey, plaintiff Springfield Bank's home office municipality, and National State and Union Center are wrongfully operating branches in that municipality. The complaint sought, inter alia, to restrain the implementation of the approvals thus granted by the Comptroller to National State and Union Center for the establishment of branches by each in the Township of Springfield; to enjoin National State and Union Center from acting pursuant to those approvals and from commencing construction of branch bank facilities in the township; and to adjudicate that the approvals in question were illegal.

Following the filing of the complaint, the district court denied a temporary restraining order sought by Springfield Bank and thereafter on July 30, 1969, after hearing, denied its application for a preliminary injunction. Thereafter the parties filed cross motions for summary judgment accompanied by affidavits. The facts were undisputed. The district court on July 10, 1970 filed an opinion holding that, under the law of New Jersey, Springfield Bank was not entitled to home office protection from February 20, 1969, the date it received approval from the Commissioner of Banking and Insurance of New Jersey of its application for a charter for a new bank in the Township of Springfield, but only from January 31, 1970, the date on which, after litigation, it actually opened its principal office in the township. Since National State and Union Center had actually opened their branch offices in the township prior to the latter date, namely, on July 18, 1969, the district court concluded that Springfield Bank was not entitled to home office protection against those branch offices and that the defendants' motions for summary judgment should be granted. Four days later and

prior to the actual entry of the summary judgment the Appellate Division of the Superior Court of New Jersey decided an appeal from the Commissioner of Banking and Insurance entitled In re The Summit and Elizabeth Trust Co., App. Div.1970, 111 N.J.Super. 154, 268 A.2d 21, which involved the right of the Summit and Elizabeth Trust Company, herein called "Summit", to establish a branch bank in the Township of Springfield as against the objections of Springfield Bank and National State.[1] The court held that Springfield Bank was entitled to home office protection from February 20, 1969, the date its charter was approved rather than only from January 31, 1970, the later date on which it actually opened for banking business after receiving its certificate of authority to do so. Since Summit's application for branch banking authority was filed on May 5, 1969 and approved on January 20, 1970, all of which was subsequent to February 20, 1969 although prior to January 31, 1970, the court held that it was not entitled to open its proposed branch in view of the protection accorded Springfield Bank by the New Jersey statute, N.J.S.A. 17:9A–19. Springfield Bank promptly asked the district court to amend its conclusions of law filed July 10, 1970 to accord with the decision of the New Jersey court in the Summit case, but the court on December 7, 1970 filed a second opinion adhering to the conclusions reached in its first opinion, and on December 23, 1970 summary judgment in favor of the defendants was entered. From that judgment Springfield took the appeal now before us.

The facts being undisputed, the question presented by the appeal is a purely legal one. It is whether under the law of the State of New Jersey restricting as to location the establishment and operation of branches by state banks, to which

restrictions national banks operating in that state are subjected by the national banking law, National State and Union Center were prohibited from establishing branch offices in the Township of Springfield from and after February 20, 1969, the date on which Springfield Bank's charter providing for its principal office to be in the Township of Springfield was approved, or whether the prohibition extended only from January 31, 1970, the time when Springfield actually opened for banking business in the township. If the New Jersey law had the former effect the subsequent establishment of branches in the township by National State and Union Center was unlawful and should have been enjoined. But if, on the other hand, the latter is the effect of the New Jersey law, as the district court held, the establishment by National State and Union Center of their branches in the township prior thereto, i.e., on July 18, 1969, was lawful and injunctive relief was rightly refused.

Section 5155 of the Revised Statutes of the United States, as amended by the Banking Act of 1933, 12 U.S.C.A. § 36, in pertinent part provides:

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) . . . (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks . . . ."

Section 19 of the New Jersey Banking Act of 1948, as amended by the Act of January 17, 1969, effective July 17, 1969,

---

[1]. Union Center also objected to Summit's application during hearings conducted by a hearing examiner. Following his recommendation to approve Summit's application, 10 days were allowed to the objectors to file exceptions. Springfield and National State filed written objections with the Commissioner on January 19, 1970; Union Center mailed objections on that date but they were not received within the specified time. See 111 N.J.Super. at 161, 268 A.2d at 24.

N.J.S.A. 17:9A–19, in pertinent part provides:

"A. Any bank or savings bank may, pursuant to a resolution of its board of directors or board of managers, establish and maintain branch offices, subject to the conditions and limitations of this article.

"B. No bank or savings bank shall establish or maintain a branch office which is located outside the municipality in which it maintains its principal office; except that a bank or savings bank may establish and maintain a branch office or offices anywhere in the same banking district as that in which it maintains its principal office:

"(1). . .

"(2). . .

"(3) when each proposed branch will be established in a municipality in which no banking institution has its principal office or a branch office; except that, when a municipality has a population of 7,500 or more, and no banking institution has its principal office therein, a bank or savings bank may establish and maintain a branch office or offices in such municipality notwithstanding the presence therein of one or more branch offices of one or more banking institutions."

Prior to its amendment by the Act of January 17, 1969, clause B(3) of section 19 of the New Jersey Banking Act merely read:

"(3) when each proposed branch will be established in a municipality in which no banking institution has its principal office or a branch office."

The clause then did not contain the exception authorizing the establishment of a branch office in municipalities having a population of 7,500 or more in which no bank had its principal office even though other banks had already established branch offices therein. It was that exception to the restrictive provisions of clause (B) (3) which was added by the amendment of 1969.

It will be seen that under the New Jersey law, N.J.S.A. 17:9A–19, both before and after the 1969 amendment, a bank was protected from having the branch office of another bank established in the municipality in which it had its principal office. This is the so-called "home office protection" referred to in this case. Prior to the amendment the statute also accorded similar protection to established banking branch offices but that protection was eliminated by the amendment with respect to branch offices in municipalities having a population of 7,500 or more. Sometime prior to January 17, 1969 National State had lawfully established and thereafter maintained in the Township of Springfield a branch office not involved in this case. Since that branch office was entitled to so-called branch office protection under the statute as it was prior to the 1969 amendment, its existence precluded the establishment of any more branch offices by banks in the township prior to July 17, 1969, the effective date of the 1969 amendment. However, since the population of the Township of Springfield admittedly was and is more than 7,500 that branch office protection ended in the township on July 17, 1969.

In December 1967 the organizers of Springfield Bank applied to the Commissioner of Banking and Insurance of New Jersey for a charter to enable their proposed bank to conduct a banking business with its principal office in the Township of Springfield. The application was opposed by National State, Union Center and Summit but after a number of hearings was approved by the Commissioner on February 20, 1969. Meanwhile, as we have seen, the New Jersey Banking Act, N.J.S.A. 17:9A–19, had been amended on January 17, 1969, effective July 17, 1969, to eliminate branch office protection, so far as concerned the Township of Springfield and all other municipalities having a population of 7,500 or more. On the very day of the enactment of the amendment, National State and Union Center each applied to the Comptroller of the Currency for his approval of the establishment of a branch office in the Township of Springfield. National State

and Union Center, as well as Summit which also desired to establish a branch office in that township, appealed to the Appellate Division of the Superior Court of New Jersey from the Commissioner's decision granting Springfield Bank a charter. On March 31, 1969 National State obtained from the court a stay pending the decision of the court, which prevented Springfield from proceeding to obtain from the Commissioner a certificate of authority to open for business. On October 20, 1969 the Appellate Division of the Superior Court lifted the stay and affirmed the Commissioner's approval of Springfield Bank's charter application. In re Springfield State Bank, 1969, 107 N.J.Super. 230, 258 A.2d 24, cert. den. 1970, 55 N.J. 312, 261 A.2d 356. Springfield Bank then began the necessary steps to obtain from the Commissioner a certificate of authority to begin business operations. On January 30, 1970 the Commissioner issued such a certificate and the following day Springfield Bank began business operations in the township of Springfield.

The Comptroller, during the course of his consideration of the applications of National State and Union Center for branch banking authority, had received objections from Springfield Bank and on May 2, 1969 he was informed that in the opinion of counsel for Springfield Bank, since its application for a charter had been granted, there existed a home office in Springfield and it would be illegal and contrary to New Jersey law to grant branch office approval at that time. Nonetheless, on July 17, 1969, the day the statutory amendment became effective eliminating branch office protection in the Township of Springfield, the Comptroller of the Currency formally approved the applications of National State and Union Center for the establishment of branch offices in the township and on the next day a branch office of each was opened for business. Four days later Springfield Bank filed the present suit seeking to enjoin that action.

Meanwhile on May 5, 1969 Summit, which was a state bank, had applied to the Commissioner of Banking and Insurance of New Jersey for permission to establish a branch office in the Township of Springfield. Springfield Bank, National State and Union Center all opposed the application but on January 20, 1970 the Commissioner approved it, holding that Springfield Bank was not entitled to home office protection against such an application until it had actually opened for business. Springfield Bank appealed this decision to the Appellate Division of the Superior Court of New Jersey, which at the application of Springfield Bank stayed the opening of the branch office by Summit pending the outcome of the appeal. On July 14, 1970 the Appellate Division reversed the decision of the Commissioner, holding that Springfield Bank was entitled to home office protection against the opening of the proposed branch office by Summit from February 20, 1969, the date on which the Commissioner approved Springfield Bank's charter application and that Summit's branch office application, which was filed and approved after that date, should, therefore, have been denied. In re The Summit and Elizabeth Trust Co., 1970, 111 N.J.Super. 154, 268 A.2d 21.

The district court in its first opinion in the present case took the home office protection provisions of the New Jersey statute to mean that such protection did not attach to a newly incorporated bank until its home office had actually been opened for business. It appears that up to the time the opinion was filed the New Jersey courts had not dealt with the effect of this provision of the statute and the district court relied upon its own prior opinion in Suburban Trust Company v. The National Bank of Westfield, D.C. N.J.1963, 222 F.Supp. 269, in which it had held that branch office protection under the statute did not attach until the branch office of the bank invoking it had actually opened for business. The branch office protection involved in that case was regarded by the court as closely analogous to the home office protection involved in this case. However, as we have seen, the Appellate Division of the Su-

perior Court of New Jersey, only four days later, held in the Summit case that the very same home office of the very same bank, Springfield Bank, which is involved in this case, was entitled under the statute to home office protection from February 20, 1969, the date its charter was approved. Although this New Jersey decision of the precise question involved in the present case was promptly called to the attention of the district court by Springfield Bank in support of its motion to amend the court's conclusions of law, the court declined to follow or apply it, reaffirmed its original conclusions and entered judgment for the defendants. In so doing we think the district court erred.

 The responsibilities of the Comptroller of the Currency in dealing with an application for the establishment of a branch office under the national banking law, 12 U.S.C.A. § 36(c), are twofold. In the first place, he may grant the application only if the statutory law of the state in which the national bank is situated authorizes state banks to establish and operate branches "by language specifically granting such authority affirmatively and not merely by implication or recognition." This, as we pointed out in Howell v. Citizens First National Bank of Ridgewood, 3 Cir., 1967, 385 F.2d 528, 530, involves a federal question "to be decided by reading the state statute through lenses prescribed by the Congress." But, in addition to determining this question, the Comptroller must apply to the application "the restrictions as to location imposed by the law of the State on State banks." The latter involves no federal question. On the contrary, after having found that the statutes of the state, read through the Congressionally prescribed spectacles, authorize branch banking, it becomes the duty of the Comptroller, in determining whether a national bank may establish a branch at a particular location in the state, to follow and apply the whole relevant statutory and decisional law of the

state as interpreted by its courts and applied to its state banks. We think it is clear from the way in which the federal statute is written that when the Comptroller comes to act upon the application of a national bank for a branch in a state which he finds specifically authorizes branch banking he is to apply the state restrictions upon its location in exactly the same way as the state banking authorities would be required to do with respect to an application by a state bank for a branch at the same location. First Nat. Bank of Logan, Utah v. Walker Bank, 1966, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343; First National Bank in Plant City, Florida v. Dickinson, 1969, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312.

In First Nat. Bank v. Walker Bank, 1966, 385 U.S. 252, 261, 87 S.Ct. 497, the Supreme Court said:

> "It appears clear from this résumé of the legislative history of § 36(c)(1) and (2) that Congress intended to place national and state banks on a basis of 'competitive equality' insofar as branch banking was concerned. Both sponsors of the applicable banking Acts, Representative McFadden and Senator Glass, so characterized the legislation. It is not for us to so construe the Acts as to frustrate this clear-cut purpose so forcefully expressed by both friend and foe of the legislation at the time of its adoption. To us it appears beyond question that the Congress was continuing its policy of equalization first adopted in the National Bank Act of 1864. . . ."

This rule was reaffirmed in First National Bank v. Dickinson, 1969, 396 U.S. 122, 90 S.Ct. 337, the Court stating:

> "The conditions under which national banks may establish branches are embodied in § 7 of the McFadden Act, 44 Stat. 1228, as amended, codified in 12 U.S.C. § 36. One such condition is that a 'branch' may be established only when, where and how state law would

authorize a state bank to establish and operate such a branch, 12 U.S.C. § 36 (c) . . .

\* \* \* \* \* \*

"At the outset we note that, while Congress has absolute authority over national banks, the federal statute has incorporated by reference the limitations which state law places on branch banking activities by state banks. Congress has deliberately settled upon a policy intended to foster 'competitive equality.' . . . State law has been utilized by Congress to provide certain guidelines to implement its legislative policy.

"We need not review the legislative history of the McFadden Act and prior national bank legislation as it relates to this problem; that task was performed by Mr. Justice Clark in *Walker Bank, supra,* where a unanimous Court noted that the McFadden Act was a response to the competitive tensions inherent in a dual banking structure where state and national banks coexist in the same area. That Act reflects the congressional concern that neither system have advantages over the other in the use of branch banking. . . ." [396 U.S. at pp. 130, 131, 90 S.Ct. at p. 342]

■ Here the Appellate Division of the Superior Court of New Jersey has applied the restrictions on location of branch banks imposed by the law of New Jersey to prohibit the establishment of a branch bank in the Township of Springfield by reason of the home office protection which the Appellate Division held the Springfield Bank has enjoyed under the law since its incorporation on February 20, 1969. Since this determination by the state court was made before the entry of final judgment by the district court, it was the duty of the latter court to follow it as the current determination of the applicable state law in framing the judgment subsequently entered.

Vandenbark v. Owens-Illinois Glass Co., 1941, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327; Ziffrin v. United States, 1943, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621.

The Comptroller argues, however, that the district court was right in continuing to rely upon Suburban Trust Co. v. National Bank of Westfield, D.C.N.J. 1963, 222 F.Supp. 269, and that it was not required to follow the intermediate state court decision in the Summit Bank case, citing in support of this contention Commissioner of Internal Revenue v. Estate of Bosch, 1967, 387 U.S. 456, 87 S. Ct. 1776, 18 L.Ed.2d 886. That case involved federal estate tax liability and presented a federal question which makes it wholly distinguishable from the present case. It is well settled that where, as here, state law governs, a federal court may not decline to accept a rule announced by a court of intermediate appeal deciding a state question. Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Six Companies v. Joint Highway Dist. No. 13, 1940, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114; West v. A.T.&T. Co., 1940, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139; McLouth Steel Corp. v. Mesta Machine Co., 3 Cir. 1954, 214 F.2d 608, 610, cert. den. 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687.

It is argued by Springfield Bank that in the Summit case the court construed the New Jersey Banking Act as requiring home office protection to be given in every case from the date of charter approval rather than from the later date of actual opening for business. While the Appellate Division did state that the question confronting it in the case was "when home office protection becomes effective" and there is language in the court's opinion indicating that it believed that such protection under the statute attached from the date of the charter grant, its actual decision appears to have been limited to the particular facts of

Springfield Bank's situation. The court said in this regard:

"In the factual complex of this case, it would be inequitable to deny to Springfield the benefits of the Branch Banking Act while it was subject to the statutory concomitant burdens and could not obtain a certificate of authority and open for business because of the stays obtained by the objectors of its charter. . ." [111 N.J.Super. at p. 168, 268 A.2d at p. 28]

It will be recalled that the objectors to Springfield Bank's charter were not only Summit, the litigant in the case before the Appellate Division, but also National State and Union Center, the two defendant banks in the present case. As banks desiring to establish branches in the Township of Springfield, their interests were identical with those of Summit in seeking to defeat the charter grant to Springfield Bank if possible or at least in postponing its right to home office protection against them until after their branches had been established. The home office with which each of them was concerned was that of Springfield Bank in the Township of Springfield. As we have seen, exactly the same law determined the rights of all three as against Springfield Bank, namely, the law of New Jersey. That law having been determined and applied to the facts of Summit's case by the state authorities who were entitled under the Constitution and laws of New Jersey to do so, it was incumbent upon the district court, under the federal statute and in order to effectuate the Congressional purpose, to apply it in the present case to the legally indistinguishable and almost identical facts involving National State and Union Center. The failure of the district court to do so in this case presents the anomaly of two national banks being granted branch office privileges in a municipality by the application of a state law, the application of which by the state resulted in the denial to a state bank of branch office privileges in the same municipality under legally indistinguishable circumstances. The right of Springfield bank to home office protection under the New Jersey law having been established in New Jersey with respect to a state bank, the right thus established must be recognized and enforced by the federal authorities against the defendant national banks as well.

The defendants in the present case argue that the cases of Suburban Trust Company v. National Bank of Westfield, D.C.N.J.1963, 222 F.Supp. 269, and In re Application of Montclair Savings Bank, App.Div.1971, 114 N.J.Super. 196, 275 A.2d 746, are controlling here. We cannot agree. For the Appellate Division in the Summit case found the Suburban Trust Company case "plainly distinguishable" because it involved the branch office protection which was given by the New Jersey law prior to 1969, not the home office protection involved here. The Appellate Division pointed out that there are a number of significant differences between the incorporating and establishing of a new bank and the mere opening of a branch office by an existing bank. The procedure required to accomplish the one may take weeks or even months while the other may be accomplished much more quickly. Thus the considerations for determining when home office protection should attach in the one case and branch office protection in the other may be quite different. The Montclair Savings Bank case involved a factual situation quite different from that involved in the Summit case and the present case. The equities which the Appellate Division in the Summit case found to weigh in favor of Springfield Bank's claim for home office protection were not there present.

As we have seen, National State and Union Center actively opposed the application of Summit for branch banking privileges in the Township of Springfield. In the proceeding in which they participated it was ultimately determined by the Appellate Division that the claim of Springfield Bank for home

office protection against branch banks should be recognized, in part at least because of the equities in its favor arising from the actions of Summit, National State and Union Center in opposing the grant of its charter and seeking by appeal and the securing of stays to delay the granting of its certificate of authority to commence business until after their branch offices had been approved and opened. It is clear that these same equities in favor of Springfield Bank are present in the case before us. We think that National State and Union Center are precluded on principles analogous to res judicata from asserting the contrary and that these equities must prevail in the present case as against the equities which they now allege in their favor resulting from their having actually opened and operated branch banks in the township, which they were able to do under the protection of the stay pendente lite granted by the Appellate Division so long as that stay was in force and which after October 1969, when that stay was lifted, they were able to continue to do as the result of their successful opposition to the preliminary injunction against such operation sought by Springfield from the district court in the present case. To hold otherwise would fly in the face of the clear Congressional mandate that a national bank may not be permitted a branch office in a location where under similar circumstances a state bank may not have one. For here, as we have seen, it was finally determined by the Appellate Division of the Superior Court of New Jersey that Summit might not have a branch in the Township of Springfield, in view of Springfield Bank's home office there. This determination was binding upon and should have been applied by the district court in the present case to the legally indistinguishable circumstances of National State and Union Center.

The judgment of the district court will be reversed and the cause remanded with directions for further proceedings not inconsistent with this opinion.