ELIZABETH FEDERAL SAVINGS AND LOAN ASSOCIATION, *ET AL.*, AND CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, APPELLANT, v. CHARLES R. HOWELL, COMMISSIONER, *ETC.*, *ET AL.*, RESPONDENTS.

Argued June 1, 1959—Decided June 17, 1959.

*Mr. Fred G. Stickel, Jr.,* and *Mr. William B. Kaufman* argued the cause for appellant (*Messrs. Stickel and Stickel,* attorneys; *Mr. Fred G. Stickel, Jr.,* of counsel; *Mr. William B. Kaufman,* on the brief).

*Mr. David Landau,* Deputy Attorney General, argued the cause for respondent Charles R. Howell (*Mr. David D. Furman,* Attorney General of New Jersey, attorney; *Mr. Laudau,* of counsel).

*Mr. Richard V. Stein* argued the cause for respondent Colonial Savings and Loan Association (*Messrs. Stein, Stein & Hughes,* attorneys; *Mr. Richard V. Stein,* of counsel).

*Mr. John J. Clancy* argued the cause for. New Jersey Savings and Loan League, *amicus curiae* (*Messrs. Clancy & Hayden,* attorneys; *Mr. John J. Clancy,* of counsel).

The opinion was delivered

PER CURIAM. This matter first came before us in *Elizabeth Federal S. & L. Ass'n v. Howell,* 24 *N. J.* 488 (1957). We there held that although the appellants were not parties to the application to establish a branch office under *N. J. S. A.* 17:12A-21, *subd. B,* yet they had sufficient status to attack the commissioner's grant of approval on the ground that it "exceeded his power or constituted an arbitrary exercise of it" (24 *N. J.,* at *page* 505). Appellants having misconceived their status and the nature of their burden, we concluded they should be permitted to make a further record upon the approach just stated. To that end we remanded the matter to the Commissioner "for completion of the record and such further findings and determination as the Com-

missioner may make." We retained jurisdiction, and by an order later made upon motion we directed City Federal Savings and Loan Association (the other appellants at some point abandoned the cause) to "proceed under the rules to present to the Court for determination the issues not concluded by the last opinion of the Court."

Upon the remand, the Commissioner made available to appellants all of the data upon which he had acted. There were further hearings consuming some 11 days. Upon conclusion of the hearings, the Commissioner adhered to his action in a comprehensive statement of his findings and reasons.

██ As we understand the position of the City Federal, it does not seriously contend the Commissioner's exercise of authority was arbitrary if the standard he used was legally correct. In any event, if such is the purport of the attack, we find no basis for it. Rather the claim advanced is that there was a lack of statutory authority upon the interpretation of the act which City Federal urges. It would interpret *section* 21, *subd. B,* to empower the Commissioner to approve the maintenance of the office of the acquired association as a branch office only if a denial would "denude" the area of savings and loan facilities, and to approve a substitute office only if a "vacuum" of such facilities exists at the new location. The statute does not so provide, and we see no ground upon which the suggested restriction could be read into it. Nor does the record support the claim that the Commissioner has heretofore so construed the section.

The remaining question is whether *section* 21, *subd. B,* offends due process of law because of alleged inadequacy of standards. That contention should have been urged upon the initial review, but nonetheless we will accept it. *Section* 21, *subd. B,* reads:

"Notwithstanding any of the other provisions or limitations of this section, any association into which another association has been merged or which has acquired, by purchase, reorganization, or in any other manner, all or a substantial portion of the assets of another

association, may, with the permission of the commissioner, and under such terms and conditions as he may prescribe, maintain the office previously maintained by such other association, or a suitable substitute therefor, as a branch office; *provided, however,* that the commissioner shall first determine that the maintenance of such branch is *in the public interest* and will be of benefit to the area served by such branch and to the members of the association." (Emphasis added.)

The attack centers upon the italicized phrase "in the public interest."

City Federal argues that "public interest" as thus used must mean something other than the specific criterion which follows, to wit, "benefit to the area served by such branch and to the members of the association." With that, we agree. It then contends that, so viewed, "public interest" is devoid of constitutionally required concreteness. With that we disagree.

"Public interest," of course, is a broad concept. The constitutional sufficiency of terms of such sweep may not be judged in a vacuum. The context must be considered, for the context may give concreteness to what seems abstract, or may demonstrate that despite its generality a broad standard is all that may sensibly be expected if delegated authority is to be equal to the sundry situations which may arise and for which a more precise formula cannot be devised without hurtful inflexibility. There must be an appropriate concession to the complexity of government and the practical inability of the legislative branch to deal with the details of administration. In the present situation "public interest" is adequate. It acquires content from the overall objective of the statute to achieve a sound banking structure, healthily competitive, and fully adequate for the needs of the community. And it is difficult to conceive of a standard which would be both more precise and equally workable. See *Ward v. Scott,* 11 *N. J.* 117, 124 (1952); *Schierstead v. City of Brigantine,* 20 *N. J.* 164, 169 (1955); *Lane v. Holderman,* 23 *N. J.* 304, 319 (1957).

The action of the Commissioner is affirmed.

BURLING, J. (dissenting). As I indicated in my previous dissent, 24 *N. J.*, at *page* 509 (1957), the Commissioner has no statutory authority to grant Colonial's application for a branch office at a location completely divorced from the immediate area where the Excelsior office was maintained in Elizabeth.

I do not, therefore, ever reach the problem of what standards must guide the Commissioner in his determination.

On the basis of the views previously expressed, I would reverse the agency determination and direct a dismissal of the application.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR, HALL and SCHETTINO—5.

*For reversal*—Justice BURLING—1.