105 N.J. Super. 424 (1969)
252 A.2d 740
ESSENTIAL SAVINGS AND LOAN ASSOCIATION, CALDWELL-VERONA SAVINGS AND LOAN ASSOCIATION, AND WEST ORANGE SAVINGS AND LOAN ASSOCIATION, SAVINGS AND LOAN CORPORATIONS DULY ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, APPELLANTS,
v.
CHARLES R. HOWELL, COMMISSIONER OF BANKING AND INSURANCE OF THE STATE OF NEW JERSEY, POLICE SAVINGS AND LOAN ASSOCIATION, A SAVINGS AND LOAN CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, AND BERKELEY SAVINGS AND LOAN ASSOCIATION, A SAVINGS AND LOAN CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 25, 1968.
Decided May 1, 1969.
*428 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Fred G. Stickel, III argued the cause for appellants Essential Savings and Loan Association, Caldwell-Verona *429 Savings and Loan Association and West Orange Savings and Loan Association (Messrs. Stickel, Kain & Stickel; Messrs. Vieser, Hoey & San Filippo and Messrs. Slavitt, Slavitt & Fish, attorneys, respectively).
Mr. E. Robert Levy, Deputy Attorney General, argued the cause for respondent Charles R. Howell, Commissioner of Banking and Insurance (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. Martin S. Fox argued the cause for respondent Berkeley Savings and Loan Association (Messrs. Fox, Yanoff & Fox, attorneys; Mr. Fox and Mr. Nathan L. Jacobson, on the brief).
Mr. Edward F. Beers argued the cause for respondent Police Savings and Loan Association.
The opinion of the court was delivered by LABRECQUE, J.A.D.
In this consolidated appeal the objectors challenge the determination and judgment of the Commissioner of Banking and Insurance permitting the establishment of a branch office by the Berkeley Savings and Loan Association at 611 Bloomfield Avenue, Verona, in connection with its purchase of the assets of the Police Savings and Loan Association.
Police Savings and Loan Association (Police) was a state-chartered association with assets of approximately $376,000 which was operated on a part-time basis from an office located on the second floor of Newark Police Headquarters, 22 Franklin Street, Newark. It had about 48 mortgage-borrowing members and 193 savings members.
Berkeley Savings and Loan Association (Berkeley), also state-chartered, had its main office at 88 Lyons Avenue and a branch office at 401 Chancellor Avenue, both in Newark. It had assets of approximately $85,000,000 and had approximately *430 26,000 savings and 6,500 mortgage-borrowing members.
All three appellants are also state-chartered savings and loan associations having offices which serve the area proposed to be served by Berkeley's new branch. Essential, with headquarters at 304 Bloomfield Avenue, Verona, 0.6 miles from the proposed branch, had assets (estimated savings capital) of approximately $2,500,000; Caldwell-Verona, located at 266 Bloomfield Avenue, was 1.5 miles from the proposed site and had assets of approximately $7,000,000, and West Orange, located at 459 Pleasant Valley Way, West Orange, was 1.7 miles from the proposed branch and had assets of over $4,000,000.
On July 18, 1967 Police made an application to move its office from 22 Franklin Street, Newark, to 611 Bloomfield Avenue, Verona, a distance of 12 miles. On August 24, 1967 Berkeley purchased the property where it was proposed to establish the new branch and on August 31, 1967 Police disclosed to the Commissioner that its ultimate purpose was not merely to move its office but to effect a merger with Berkeley. Following objections from other associations in the area, Police withdrew its application on September 19, 1967.
On October 25, 1967 formal agreement was reached between Berkeley and Police for the bulk sale of the assets of Police to Berkeley and the removal of its office to Verona. It would appear that the agreement of sale was so worded as to make the sale contingent upon permission to remove the office, but this is denied by counsel for Berkeley and, for reasons which will appear hereafter, we need not decide the point. On November 2, 1967 Berkeley and Police filed simultaneous applications for approval of the the bulk sale and authority to operate a branch office in Verona as a "substitute" for the present office of Police in Newark. Among the objectors were Essential, Caldwell-Verona and West Orange.
*431 At the hearing on January 3, 1968 Robert G. Strong produced an economic feasibility study prepared by Herbert H. Smith Associates which concluded that Berkeley could successfully operate the proposed branch and Richard Gartenberg, Berkeley's vice-president, produced a brochure listing Berkeley's services and details of its operations. These were received in evidence and formed the basis for the cross-examination of both witnesses which took place on January 24, 1968. Some reference will be made to them hereafter.
The Commissioner approved the bulk sale to Berkeley and separately approved the proposed Verona branch as a "suitable substitute" for the Newark office of Police. In so doing he held that the application was controlled by N.J.S.A. 17: 12B-27 and 17:12B-204(1) and (4). The present appeal is from the approval of the Verona branch.
N.J.S.A. 17:12B-204(1) authorizes the sale in bulk of the assets of a state association to any other association. Subsection 4 thereof permits the purchasing association, subject to the limitations of N.J.S.A. 17:12B-27, to simultaneously apply to the Commissioner for the establishment of a "section 27" branch office. Section 27 (N.J.S.A. 17:12B-27) provides, in pertinent part:
"Any State association, into which another association has been merged or which has acquired by purchase, reorganization or in any other manner, all or a substantial portion of the assets of another association, may make application to the commissioner for authority to operate the office previously operated by such other association, or a suitable substitute therefor, as a section 27 branch office. The commissioner may grant authority for the operation of such section 27 branch office under such terms and conditions as he shall prescribe, and such authority may be inclusive of authorized branch offices operated by the selling or merging association; provided, however, that no branch office or offices shall be established under this section, unless the offices of the associations are in the same or contiguous counties and that the commissioner shall first determine that the operation of such branch office or offices is in the public interest and will be of benefit to the area served by such branch office or offices and to the members of the association."
*432 The only other appropriate type of branch office provided for in the Savings and Loan Act (1963) is a "section 25" one. N.J.S.A. 17:12B-24, 25 and 26. As amended by L. 1965, c. 127, § 2, an association could not establish a section 25 branch office in a municipality having an area of five square miles or less where another association with assets of over $400,000 was operating. It was conceded at the oral argument that Berkeley could not have established a section 25 branch in Verona since Verona comprised only 2.8 square miles and was already served by Essential, whose assets exceeded $400,000.
In substance, appellants contend that (1) the Commissioner misinterpreted the Savings and Loan Act and applied improper standards in arriving at his determination, and (2) under a proper interpretation of the law, the proposed branch is not a suitable substitute for the office formerly operated by Police. Specifically, they urge that the words "suitable substitute therefor," as used in section 27, have a definite meaning, whether considered alone or in conjunction with other pertinent sections of the statute, and evidence a legislative intent that the branch permitted by that section is to be geared to the convenience and needs of those who have previously been served by the office of the association whose assets are being sold in bulk. Respondents dispute this and argue that since there is evidence which supports the Commissioner's findings, we should affirm.
In reviewing the factual findings of an administrative agency, we are required to determine whether they could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, having due regard for the opportunity of the one who heard the witnesses to judge their credibility and giving due consideration to the agency's presumed expertise  when such expertise is a pertinent factor. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). If the record discloses substantial evidence to support the Commissioner's factual findings, a presumption of reasonableness attaches. First S. & L. Ass'n of E. Paterson *433 v. Howell, 87 N.J. Super. 318, 322 (App. Div. 1965), certification denied 49 N.J. 368 (1967).
The foregoing presupposes that the agency applied the proper standards to the facts thus found. However, in the interpretation of the statute which is the basis for its jurisdiction and sets forth the standards to be applied, the agency possesses no skill superior to that of the court. Hence, when the issue is one of law, the court's duty and authority are not curtailed by the circumstance that the issue happens to reach it via the Commissioner. Cf. Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96 (Law Div. 1956), affirmed 24 N.J. 326 (1957). The Commissioner, as an administrative officer, is a creature of the Legislature who may act only within the bounds of the authority delegated to him. Elizabeth Federal S. & L. Ass'n v. Howell, 24 N.J. 488, 499 (1957). The responsibility of determining the limit of statutory grants of authority is a judicial function entrusted to the courts. Ibid. When we review the Commissioner's decision on an issue of law, we reverse if he was mistaken in the law and affirm if he was correct, just as if he were a trial judge. Cf. Borough of Fanwood v. Rocco, 59 N.J. Super. 306, 315 (App. Div. 1960), affirmed 33 N.J. 404 (1960).
Determination of the present issue depends, initially, upon the interpretation to be accorded the words "or a suitable substitute therefor." Counsel cite no prior adjudication which is dispositive of the issue and we find none. Elizabeth Federal S. & L. Ass'n v. Howell, supra, cited by both sides, involved an application by the Colonial Savings and Loan Association of Roselle Park, which had purchased all of the assets of Excelsior, an association located in Elizabeth, to locate a branch in Elizabeth 0.8 miles away from Excelsior's former office, as a suitable substitute for the latter. In that case the Commissioner's approval of the new branch was upheld in the face of the argument that the Commissioner was empowered to approve the maintenance of the office of the acquired association as a branch office only if a denial would "denude" the area of such facilities, and to approve a substitute *434 office only if a "vacuum" of such facilities existed at the proposed new location. See Elizabeth Federal S. & L. Ass'n v. Howell, 30 N.J. 190, 193 (1959).
The absence of any judicial precedent is reflected in the Deputy Commissioner's approach to the disposition of the application when he stated, at the beginning of the hearing:
"On the question of law, we will do our best with that, but in the final analysis that would probably be for the judicial branch and not for the executive branch."
The Commissioner disposed of the legal issue in the following terms:
"And because the statute itself does not define what constitutes a `suitable substitute', we are of the opinion that it must be reasonably assumed the Commissioner's judgment relative thereto is what the law intends and requires  the exercise of the Commissioner's sound discretion in the light of the facts before him in each case of `section 27 branching.'"
He frankly confessed that he was construing the statute to accord with his previous advocacy of statutory changes in the law, stating:
"And it is a fact and a matter of record that the Commissioner advocated a statutory change in the permissible branching of banks, savings banks, savings and loan associations.
And because of such advocacy * * * it would be difficult for us to now take the narrow view that a bar should exist to branching from Newark to Verona simply because 12 miles intervene between them. We cannot so rule."
Accordingly, he approved the branch. We will hold that in so doing he fell into error.
The statute does not obligate an association which purchases the assets of another association in bulk to continue to operate the latter's office. It permits the purchasing association to apply to the Commissioner for authority to operate the office previously operated by such other association  or a suitable substitute therefor  as a branch. The Legislature *435 has thus clearly evidenced its intention that the words "suitable substitute therefor" shall have reference to the office previously operated by the association whose assets have been purchased, rather than to that of the purchasing association. By enacting section 27 the Legislature was not merely authorizing the establishment of another branch. Unless the proposed branch qualified as a suitable substitute the applicant was required to proceed under N.J.S.A. 17:12B-24, 25 and 26. A substitute is a thing put, or acting or serving, in place of another thing. Webster's New International Dictionary (2d ed. 1950); The Random House Dictionary of the English Language (1967). The legislative requirement is that the proposed office be a suitable, i.e., an appropriate, a fitting, substitute for the old (here the Police) office.
Our consideration of the wording of section 27 in the light of the overall purpose and policy of the Savings and Loan Act satisfies us that the Legislature thereby intended that the operation of a reasonable substitute for the office formerly operated by a purchased association was for the purpose of enabling the purchasing association to reasonably meet the needs and requirements for service of the savings members and mortgagors of the acquired association and, perhaps, of affording them expanded and enlarged services. While it is not necessary that the new office, to qualify as a suitable substitute, be in the "immediate vicinity" of the office it is proposed to replace, Elizabeth Federal S. & L. Ass'n v. Howell, supra, 24 N.J., at pp. 507-508, it must be so situated that it reasonably meets the needs, present and prospective, of those served and to be served by the office proposed to be discontinued.
Here the proofs adduced were directed almost exclusively to establishing that Berkeley could successfully compete with the seven other associations located within the Verona area. There was no proof of any substantial relationship between the mortgagors and savings members of Police and the trade area. Their mortgages and savings accounts were not even *436 taken into consideration in the preparation of the feasibility study on which the application was based  or in the supporting testimony. Gartenberg testified:
"Q. Do you believe that you need this type of an office twelve miles from Newark to service the accounts and mortgages of the Police. A. Whom do you mean by `they.'
Q. Berkeley. A. Do we need an office in Verona to service the savings accounts and mortgage customers that now have accounts in the Police?
Q. Yes. A. No."
Respondents urge that under section 27 the only criteria to be applied in determining whether a proposed branch is a suitable substitute is whether its operation is in the public interest and whether it will be of benefit to the area served and to the members of the purchasing association. Not so. Not until after the Commissioner determines that the proposed new office is a suitable substitute for the one previously operated is he required to apply the cited criteria. Our conclusion in this regard is in conformity with the overall purpose and policy of the Savings and Loan Act. Thus, the approval of a section 25 branch requires, among other things, a showing that it can be established without "undue injury" to any other association in the area of the proposed branch, and it may not be granted where the municipality is less than five square miles in area and is already being served by an association having over $400,000 in assets. Since cases of merger or bulk sale involve an office previously approved whose impact on other associations has already been admeasured, compliance with the section 25 requirements becomes unnecessary and is dispensed with. Where, however, the proposed new office fails to qualify as a suitable substitute, the dispensation is no longer effective and the applicant may not be permitted to accomplish through section 27 what it may not accomplish under section 25. Cf. Elizabeth Federal S. & L. Ass'n v. Howell, supra, 24 N.J., at pp. 507-508. A strained interpretation of section 27 such as is sought by respondents will not be adopted where, as here, a construction *437 calling for reasonable results consistent with its indicated purpose is equally possible.
Respondents further urge that Police could have transferred its principal office to Verona prior to the sale of its assets to Berkeley, hence the branch proposed by Berkeley is a suitable substitute for the office which Police could have moved to Verona had it so desired. We need not pursue this argument since Police, although afforded the opportunity, voluntarily discontinued its application to remove to Verona. First S. & L. Ass'n of E. Paterson v. Howell, supra, 87 N.J. Super., at p. 328. Further, and without infringing upon the discretion of the Commissioner, we are not at all certain that the application would have been approved in view of its admitted true nature and of the high cost (in proportion to its assets) of establishing an office in Verona by Police, the smallest association in the State and the only one still operated on a part-time basis.
The facts before us lead to the inescapable conclusion that the new branch, as proposed to be located in a nonadjacent community, some 12 miles from Newark, did not qualify as a suitable substitute for the office previously operated by Police.
By reason of the foregoing, we find it unnecessary to consider the additional arguments raised by appellants.
The determination of the Commissioner of Banking and Insurance is accordingly reversed.