721 A.2d 1011 (1998)
SACKS REALTY CO., INC., a New Jersey Corporation, Plaintiff-Appellant/ Cross-Respondent,
v.
Estelle SHORE and Ziad and Susan Olabi, Defendants-Respondents/ Cross-Appellants,
Sophie Curran, Maxine Acevedo, Margaret M. Warren, Mary and Margaret Toomey, Helen Carey, Herbert and Margaret Keegan, Edward and Pearl Faber, Jeanne Dolan, Victor and Denise Davis, Harold and Dorothy Turf, Ethel Gibney, Fred and Anita Pucciarelli, Marie Stender, John P. and Margaret Nealon, Harry and Dorothy Zeller, Anne T. Sheehy, Thomas F. Kelly, Executor for Estate of Elizabeth Roache and Michael J. Kelly, Executor for Estate of M. Delores Roache, Gerald and Eleanor Mugno, Betty Berger, Marie Medina and Elizabeth Arrieta, and Helen Wynne, Executrix of the Estate of Margaret M. Geraghty, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1998.
Decided December 31, 1998.
*1012 Robert M. Kleeblatt for plaintiff-appellant/cross-respondent (Kleeblatt, Galler & Abramson, Hackensack, attorneys; Mr. Kleeblatt, on the brief).
Paul G. Garjian for defendant-respondent/cross-appellant Estelle Shore (Sheila H. Klempner, Tenafly, attorney).
Robert Pentangelo, Clifton, for defendants-respondents/cross-appellants Ziad and Susan Olabi.
Lawrence Sindoni, Jersey City, on behalf of amicus curiae Hudson County Legal Services Corp.
Before Judges PRESSLER, BROCHIN and STEINBERG.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal implicates the complex of legislation affording special protections to tenants of premises converted or proposed to be converted to condominium or cooperative ownership. The specific questions before us are first, whether as a matter of public policy a tenant may validly waive those protections without any offsetting consideration, and second, whether the retroactivity provisions of the Tenant Protection Act of 1992, N.J.S.A. 2A:18-61.40 to -61.59, may be constitutionally applied where, prior to its enactment, a consent judgment for possession has been *1013 entered but no warrant for removal has yet issued. We answer the first question in the negative and the second in the affirmative. Accordingly, we affirm that portion of the judgment from which plaintiff appeals affording defendant-tenants the protection against removal vouchsafed by the 1992 Act, and we reverse that portion of the judgment awarding plaintiff damages against defendant-tenants for the losses it sustained by reason of their non-removal.
These are the facts. In 1986 a condominium conversion of a 271-unit apartment building was proposed by 201 St. Paul's Conversion Corp., plaintiff Sacks Realty Co., Inc.'s predecessor in interest, who was the proposed condominium sponsor and the contract purchaser of the building.[1] A group of tenants, including defendant Estelle Shore, retained an attorney to advise and represent them. Others, including defendants Ziad and Susan Olabi, apparently opted not to join that group. Although a number of other tenants had been originally named as defendants in this action, Shore and the Olabis are the only defendants participating in this appeal.
In April 1986 an agreement was entered into between the sponsor and the tenant group's attorney as "authorized representative" of those tenants. The provision of that agreement material here is section 9, defining the rights of non-purchasing members of the tenant group. Defendant Shore was a non-purchasing tenant. Paragraphs (a) and (b) dealt with senior citizens and disabled tenants entitled to protection pursuant to N.J.S.A. 2A:18-61.22, et seq. Shore was then neither a protected senior citizen nor a protected disabled tenant. Her rights were, therefore, covered by paragraph (c) of that section, applicable to other non-purchasing members of the tenant group, which provided in full as follows:
The Sponsor agrees that its right to such eviction under N.J.S.A. 2A:18-61.1(k) shall be postponed for a period of one (1) year with respect to any member of the Tenants' Group who does not purchase a Unit, does not qualify for protected tenancy status under subparagraphs (a) or (b) of this Paragraph 10[sic] and who requests comparable housing in the manner specified by law. In consideration of this postponement, each applicable member shall not seek more than one (1) stay of eviction under N.J.S.A. 2A:18-61.11 and at the conclusion of that stay shall not assert any other defense to eviction including, without limitation, N.J.S.A. 2A:42-10.1 et seq.
Thereafter, the conversion was completed, all necessary repairs were made to the premises and defendants continued in possession. Plaintiff then commenced summary dispossess actions in the Special Civil Part. Those actions were concluded by individual consent judgments entered in 1989, one consented to by Shore and one consented to by the Olabis. The Shore consent judgment recited the fact of the 1986 agreement as well as these additional facts:
[D]efendant did timely and properly request plaintiff to furnish Estelle Shore with comparable housing as permitted by the Eviction Act and in lieu of furnishing such comparable housing plaintiff has agreed that the issuance of a warrant for removal in this case will be stayed for two years from the date of entry of this judgment and the plaintiff will provide the defendant with five (5) months hardship relocation compensation in full satisfaction of the requirements of N.J.S.A. 2A:18-61.16 [sic] and will waive payment of one month's rent for moving expense compensation in full satisfaction of the requirements of N.J.S.A. 2A:18-61.10, and the defendant has further agreed to waive the notice required under N.J.S.A. 2A:18-16.11 for payment of such compensation; and it further being made known to the Court that defendant waives all notices required by N.J.S.A. 2A:18-61.2; and it further being known to the Court that defendant waives the right to any additional stays under N.J.S.A. 2A:18-61.11 and N.J.S.A. 2A:42-10.1 et seq. or under the Court's general equitable powers; and it further *1014 being made known to the Court that defendant waives the right, if any, to a protected tenancy under the Senior Citizens and Disabled Protected Tenancy Act, N.J.S.A. 2A:18-61.22, et seq. ("the Act") whether or not defendant satisfies, now or at any time in the future, the criteria set forth in the Act; and it further appearing to the Court that the parties have mutually agreed to the entry of the within judgment; and good cause appearing therefore.
The consent order then went on to decree that plaintiff was entitled to a judgment of possession, that issuance of the warrant for removal would be stayed for two years from the date of the judgment rather than the one-year specified by the agreement, that upon defendant's vacation of the premises, plaintiff would pay defendant one month's rent for moving expense compensation and five months' rent for relocation compensation, and that plaintiff would return the security deposit within thirty days after vacation. The consent judgment signed by the Olabis was virtually identical except that the recitations omitted reference to the tenant group agreement and provided for only a one-year stay of the warrant, thereafter extended for a second year by a subsequent consent order.
Defendants did not vacate the premises prior to the two-year stay period provided for by the consent judgments, but plaintiff did not immediately apply for a warrant for removal because, prior to the expiration of the two-year period, the Legislature enacted L. 1991, c. 45, effective March 4, 1991. That legislation imposed a moratorium until June 1, 1992, on the removal by landlords of tenants proposed to be evicted because of a condominium or cooperative conversion. Section 2 of that legislation expressly prohibited the removal of such tenants against whom a judgment of possession had been obtained but who had not been actually removed as of the effective date of the Act. The Legislature then passed the Tenant Protection Act of 1992, effective on the date of the moratorium's expiration. The 1992 Act substantially extended the class of tenants that had been protected in the event of condominium or cooperative conversion by the 1981 Senior Citizens and Disabled Protected Tenancy Act, N.J.S.A. 2A:18-61.22 to -61.39. It also conferred protected status on those tenants covered by the 1992 Act from the date of the inception of the moratorium. That intention is made clear by its express retroactive provision, N.J.S.A. 2A:18-61.56. By that provision, the Legislature effectively prohibited the institution of an action for removal of a qualified tenant under the Act, the entry of a judgment against such a tenant in a previously instituted action for possession, and the removal of such a tenant except in accordance with the terms and conditions of the Act. Qualification for protection under the Act depends on a combination of factors, including the county in which the premises are located, the household income of the tenant, and the period of the tenant's occupancy. N.J.S.A. 2A:18-61.42, 61.43. It is not disputed that both Shore and the Olabis meet the qualification criteria. Nor is it disputed that under the terms of the Act, they are not eligible for removal.
After the passage of the Act, plaintiff commenced this action in the Law Division seeking, in effect, enforcement of its consent judgments by the issuance of warrants for removal and money damages against defendants because of the losses allegedly sustained by reason of their failure to comply with the terms of the consent judgment, and, in Shore's case, also with the terms of the 1986 agreement. Its essential contention was that the 1992 Act could not be constitutionally applied retroactively so as to abrogate both the 1986 agreement and the 1989 consent judgments. The trial court agreed and granted partial summary judgment to plaintiff adjudicating the inapplicability of the Act on the ground that it unconstitutionally affected vested property rights. We granted defendants' motion for leave to appeal, and in Sacks Realty Co., Inc. v. Shore, 276 N.J.Super. 621, 648 A.2d 736 (App.Div. 1994) (Sacks I), we reversed the partial summary judgment, without, however, addressing the constitutional issue. The basis for the reversal was our conclusion that both the 1986 agreement and the 1989 consent judgments were void on their face because they included a waiver by the tenant of the protections of the 1981 Senior Citizens and Disabled Protected Tenancy Act in violation of *1015 the express prohibition of N.J.S.A. 2A:18-61.36 against such waiver by tenants. Plaintiff thereafter moved for reconsideration on the ground that defendants did not qualify for protection under the 1981 Act and hence that their "illegal" waiver of its protections was mere surplusage and a legal nullity. We then entered an order adhering to our opinion but permitting plaintiff to offer "further evidence relevant to the issues, including the issues considered in the appeal."
On remand, the trial judge reconsidered the constitutionality issue. He concluded that there was no constitutional impediment to the retroactive application of the anti-removal provision of the 1992 Act and therefore denied plaintiff's application for warrants of removal. He held, however, that despite the prohibition against removal, defendants were bound by their respective agreement and consent judgments and therefore responsible for whatever economic losses plaintiff had sustained by not having been able to sell their apartments. The damages claims were thereafter tried to a jury which awarded plaintiff damages against Shore in the amount of $28,146 and against the Olabis in the amount of $27,876. Plaintiff appeals from the judgment insofar as it adjudicated the constitutionality of the 1992 Act's retroactive provision.[2] Defendants Shore and Olabi cross appeal from the determination that they are liable for damages and from the consequent jury award. We affirm that portion of the judgment appealed from by plaintiff. We reverse that portion of the judgment appealed from by defendants and vacate the jury verdict.
Before considering the constitutional issue, we address the validity, as a matter of public policy, of paragraph 9(c) of the 1986 agreement and the waiver provisions of the 1989 consent judgments. We are persuaded that defendants' respective waivers of the complex of statutory rights then afforded them was, in the circumstances, impermissible as a matter of public policy, rendering the agreement and consent judgments void. This is the same conclusion we reached in Sacks I. We do so now for somewhat different reasons.
We address first the state of the law as it existed in 1986 respecting tenants' rights in the face of condominium or cooperative conversion. In addition to the 1981 Senior Citizens and Disabled Protected Tenancy Act, not then applicable to these defendants, are the relevant provisions of the Anti-Eviction Act, N.J.S.A. 2A:61.1 to -61.21, as it evolved over the years. The condominium and cooperative conversion provisions, N.J.S.A. 2A:18-61.6 to -61.12, were added by L. 1975, c. 311, and thereafter amended. Earlier portions of the Act were also amended accordingly. Thus, in relevant part, N.J.S.A. 2A:61.2, prescribing notice periods, was amended by L. 1975, c. 311, § 2 to add paragraph g, which requires that in the case of a termination of tenancy based on a conversion, the landlord must make written demand and give the tenant "three years' notice prior to the institution of action." N.J.S.A. 2A:18-61.8 gives the tenant the exclusive right, for ninety days, to purchase the apartment in which he resides. N.J.S.A. 2A:18-61.10 requires the landlord to waive a month's rent for a removing tenant as moving expense compensation. N.J.S.A. 2A:18-61.11, the heart of c. 311, requires the landlord, on the tenant's request, to offer comparable housing and affords the tenant a one-year stay of eviction until that obligation is satisfied, subject to five more automatic one-year renewals of the stay "where the landlord failed to allege to the court within 1 year of a prior stay that the tenant was afforded a reasonable opportunity to examine and rent comparable housing." N.J.S.A. 2A:18-61.11b. Finally, the landlord is accorded the option by N.J.S.A. 2A:18-61.11c of avoiding the automatic renewals if he has provided the tenant "with hardship relocation compensation of waiver of payment of 5 months' rent." See generally Mountain Management Corp. *1016 v. Hinnant, 201 N.J.Super. 45, 492 A.2d 693 (App.Div.1985).
It is significant to note that the implementing regulation, N.J.A.C. 5:24-1.7, adopted pursuant to N.J.S.A. 2A:18-61.12 and dealing with conversion evictions, expressly defines the hardship relocation compensation as a waiver of five months' rent and requires the landlord to demonstrate to the court that the waiver has been granted in order to avoid the five automatic renewals. See Daskel Investors v. Rosenbloom, 244 N.J.Super. 393, 397, 582 A.2d 854 (Law Div. 1990), holding on the basis of the statute and regulation that a tender of payment of six months' rent, five for relocation and one for moving expenses, made at the summary dispossess hearing does not satisfy the requirement of N.J.S.A. 2A:18-61.10 and 11. We agree that since the purpose of the compensation is obviously to put money in the tenant's hand before removal in order to enable him to contract for moving costs and to meet the expenses of obtaining relocation, including payment of a new security deposit, the landlord's cash payment after removal rather than waiving the rent during the tenant's occupancy substantially defeats the legislative purpose and is therefore not in compliance with the required manner in which the landlord must exercise the compensation option.
We consider the relevant terms of the 1986 agreement and the 1989 consent judgments in the light of the foregoing rights that defendants had already been accorded by the 1975 legislation. To begin with, we recognize that the agreement accorded some substantive concessions to purchasing tenants. Those concessions, of course, have no applicability to non-purchasing tenants. All the non-purchasing tenants got was what was accorded to them by section 9(c), which gave them considerably less than the statutes. First, under the terms of the agreement, the landlord, certainly by implication, declined to offer comparable housing, thereby depriving the tenant of the automatic five-year stay renewals following the initial one-year stay. The landlord was, apparently, exercising the compensation option, but was proposing to do so in the proscribed manner of a post-tenancy payment rather than a waiver during tenancy. Moreover, the tenant expressly waived the notice requirements of N.J.S.A. 2A:18-61.2, the right to automatic renewals under N.J.S.A. 2A:18-61.11b, and the right to assert protected tenancy under the 1981 Act in the future. It appears that the only provision of the essentially conforming consent judgment that is at all construable as giving the tenant more than the statute was the initial two-year, rather than the required one-year stay, as specified by the agreement and the statute. But that too is an illusory benefit in view of the tenant's right to the automatic stay renewals where the landlord, as here, does not undertake to offer comparable housing. The terms of the consent orders are otherwise substantially the same as those of 9(c) of the agreement.
From the foregoing, we think it plain that defendants, both in the agreement and in their respective consent orders, gave up valuable statutory protections for, effectively, no consideration at all. We recognize that while the 1981 Act and the 1992 Act, by N.J.S.A. 2A:18-61.36 and -61.55 respectively, expressly prohibit tenant waiver of the rights accorded thereby, nevertheless the original 1975 conversion legislation, N.J.S.A. 2A:18-61.6 to61.12, includes no such express prohibition. We do, however, point out that N.J.S.A. 2A:18-61.4 prohibits waiver by the tenant in the lease of any of the rights, including notices, provided by the original Anti-Eviction Act as amended, a right these defendants waived in the agreement and consent order. Whether N.J.S.A. 2A:18-61.4 also applies to a post-lease agreement or to the full panoply of additional rights afforded by 1975 conversion legislation are, in our view, not dispositive questions. We are satisfied, in any event, that whether or not a waiver of rights conferred by the 1975 conversion legislation is expressly prohibited by statute, general considerations of public policy so mandate.
It is well settled that the dictates of public policy may require invalidation of private contractual arrangements where those arrangements directly contravene express legislative policy or are inconsistent with the public interest or detrimental to the *1017 common good. Vasquez v. Glassboro Service Ass'n, Inc., 83 N.J. 86, 98, 415 A.2d 1156 (1980) (invalidating on public policy grounds a migrant worker contract that provided for the worker's summary ejection from employer-provided housing in the event of his discharge). It is also clear that these public policy concerns become more insistent when, as here, there is obviously unequal bargaining power, the burdened party is weaker and is a member of a class for which the Legislature has articulated the need for special protection, and the offending contractual provisions are in direct violation of the Legislature's enacted protective scheme. Residential tenants, faced with eviction because of circumstances beyond their control and solely within that of the landlord, constitute just such a class, and thus, even if their waiver of a statutory right is not expressly interdicted, the courts will not hesitate to enforce their statutory protection by declaring their contractual waivers ineffective. See 316 49 St. Assoc. v. Galvez, 269 N.J.Super. 481, 486-489, 635 A.2d 1013 (App.Div.), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994) (holding that a tenant may not be evicted for failing to sign a lease that included a statutorily offensive non-renewal provision and required payments in excess of that permitted by the rent control ordinance); Kearny Court Assoc. v. Spence, 262 N.J.Super. 241, 246, 620 A.2d 1056 (App.Div.1993) ("[w]aiver of rights under the rent control laws are not favored since they violate public policy"). And as Judge Serpentelli explained in Tave v. Furst, 182 N.J.Super. 497, 500, 442 A.2d 658 (Dist.Ct.1981):
To permit the parties to a lease to obviate the rent control limitations of the ordinance would destroy the "highly important benefit and protection designedly sought to be conferred upon tenants as a class" [citation omitted] by such legislation. The agreement in this case is therefore void because it contravenes the legitimate public policy considerations embodied in the ordinance.
The Legislature, by its enactments in 1975, 1981 and 1992, recognized the hardships imposed, particularly upon the elderly and persons of moderate means, when forced to vacate their homes by reason of a conversion. Without unduly impinging upon the property rights of the landlord, it has determined, in progressive steps, that those rights must, to some reasonable extent, give way to the accommodation and protection of the tenants. The Legislature expressly prohibited waiver of those protections in 1981 and 1992. We see no reason why the initial protections afforded in 1975 should be accorded any less solicitude by the courts. Indeed, our failure to do so would, in our view, substantially undermine the Legislative effort over the years to protect tenants from the hardships of conversion.
Since we have concluded that both the 1986 agreement and the 1989 consent judgments contravene the 1975 conversion legislation by tenant waiver of at least some of the rights accorded thereby, we hold them to be void and unenforceable as against public policy. Accordingly, neither had the capacity to give plaintiff any vested rights, and its retroactivity argument does not come into play. Obviously, as well, since the basis on which the responsibility for damages was deemed by the trial judge to rest is thus vitiated, defendants have no responsibility therefor.
We address briefly the retroactivity argument, which we are satisfied is without merit. In Edgewater Inv. Assocs. v. Borough of Edgewater, 103 N.J. 227, 240, 510 A.2d 1178 (1986), the Supreme Court sustained the express retroactivity of the 1981 Senior Citizens and Disabled Protected Tenancy Act against the argument of unconstitutional taking and impairment of vested property rights obtained by contract. The Court's reasoning clearly applies as well to the 1992 Tenant Protection Act and, but for the entry of the consent judgments prior to its enactment, Edgewater would be entirely dispositive. The question then is whether the consent judgments, if otherwise valid and enforceable, are subject to retroactive impairment.
This question was addressed by the United States Supreme Court in Fleming v. Rhodes, 331 U.S. 100, 67 S.Ct. 1140, 91 L. Ed. 1368 (1947), in similar circumstances involving the Emergency Price Control Act, which had *1018 imposed constraints on the right of landlords in defined defense-housing areas to evict tenants and required such landlords to obtain a regulatorily prescribed certificate in order to institute an eviction action. The Emergency Price Control Act had expired by its own terms on June 30, 1946. The landlord there had instituted eviction actions immediately thereafter and obtained judgments, but it had not effected the tenants' removal prior to the Congressional action in late July 1946, extending the Price Control Act. The extension was made retroactive to June 30, 1946. The Price Control Administrator, relying on the retroactivity provision, then brought an action in the district court seeking to enjoin the removal of the tenants against whom judgments had been entered. In reversing the denial of that relief, the Supreme Court held that the retroactivity provision was not an unconstitutional taking or impairment of contract or impingement on judicial authority and separation of powers because what was actually in issue was not the status of the judgments but, rather, the landlord's right to take future action thereunder to remove the tenants. Justice Reed explained as follows:
It is immaterial whether the state judgments were obtained before or after the effective date of the Extension Act. The effort of the appellant is to enjoin future proceedings for eviction after the acquisition by the landlord appellees through valid judgments of what the district court characterized as "vested rights."
Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution. So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise the paramount powers of Congress could be nullified by "prophetic discernment." The rights acquired by judgments have no different standing. The protection of housing accommodations in defense-areas through the price control acts may be accomplished by the appellant notwithstanding these prior judgments. The preliminary injunctions should have been granted.
[Citations omitted.] [331 U.S. at 107, 67 S.Ct. at 1144, 91 L. Ed. at 1373-1374.]
The same is true here. It is not the judgments for possession that give plaintiff actual possession of the premises. The further judicial act of issuance of a warrant for removal is required, and the issuance of a warrant is by no means an automatic or a ministerial act. See N.J.S.A. 2A:18-57, permitting the court to withhold issuance of the warrant for good cause. As in Fleming, therefore, future proceedings were required here before plaintiff could claim a vested right to possession. Thus the adoption of the 1992 Act intervened before finality. See also Casino Ass'n v. Atlantic City, 217 N.J.Super. 277, 283, 525 A.2d 1109 (App.Div.1985), finding "no improper legislative intrusion into the judicial sphere" where public rights are concerned or legislative action precedes the finality of judicial action.
Finally, we are compelled to conclude that even if the 1986 agreement and 1989 judgments were valid, the retroactive application of the 1992 Tenant Protection Act would preclude any award of damages against defendants flowing from their failure to vacate. The 1992 Act affords defendants the right to remain in possession of their apartments. That right is unqualified and unconditional as long as the statutory criteria for protection thereunder are met. The right to remain and the payment of damages for not having left are completely incongruent and contradictory consequences. We think it plain, therefore, that if the Act retroactively protects these defendants, it equally protects their continued tenancies and their freedom from consequent damages.
The judgment appealed from, to the extent it sustains the validity of the retroactive provision of the 1992 Tenancy Protection Act, is affirmed. The judgment appealed from, to the extent it holds defendants liable for damages, is reversed and the judgment entered on the jury verdict is vacated.
NOTES
[1] Plaintiff acquired title in 1991 and the consent judgments hereafter described were assigned to it. The designation "plaintiff" is used collectively for Sacks Realty Co., Inc., and its predecessors in interest.
[2] Plaintiff also argues, relying on the variant language of the 1991 moratorium, that the express retroactive provision of the 1992 Act does not apply where, prior to its enactment, the landlord has already obtained a judgment of possession. We regard that argument as, however, directly contradicted by the express language of the 1992 Act, and we summarily reject it. R. 2:11-3(e)(1)(E).